# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

PAVEL BUTORIN, *Derivatively on behalf of* §
*nominal defendant KBR Inc.,* §
§
    *Plaintiff*, §
§
v. §      CIVIL ACTION H-14-1471
§
W. FRANK BLOUNT, *et al.,* §
§
    *Defendants*. §

## MEMORANDUM OPINION & ORDER

Pending before the court is a motion to dismiss filed by defendants Frank Blount, Loren Carroll, Jeffrey Curtiss, Linda Cook, Lester Lyles, Jack Moore, Richard Slater, John Huff, and William Utt (collectively, the "Board"), and nominal defendant KBR, Inc. ("KBR"). Dkt. 13. Plaintiff Pavel Butorin, a shareholder of KBR, brings this derivative action on behalf of KBR. Dkt. 12. After considering the amended verified complaint, motion to dismiss, response, reply, and the applicable law, the court is of the opinion that the motion (Dkt. 13) should be DENIED but that the court should *sua sponte* TRANSFER the case to the United States District Court in the District of Delaware.

## I. BACKGROUND

Butorin brought this claim derivatively for the benefit of KBR against the Board and nominal defendant KBR (collectively, "Defendants") for breach of fiduciary duties, abuse of control, violations of section 14 of the Securities and Exchange Act of 1934, and unjust enrichment. Dkt. 12. Butorin contends that KBR's financial reports showed steady profits from certain Canadian contracts in 2013 when there were actually large undisclosed losses from those contracts. *Id.* Butorin alleges

that Defendants were presented with facts showing KBR's internal controls relating to accounting for these contracts were inadequate repeatedly in 2013, but KBR did not disclose it publicly until an independent auditor identified weaknesses. *Id.* KBR restated its financial statements in May 2014 and, according to Butorin, admitted that it had violated Generally Accepted Accounting Principles resulting in an artificial inflation of KBR's operating income in its Services segment by over 500%, and an overstatement of KBR's net income by over 300% during the third quarter, 200% in the fourth quarter, and over 60% for the entire year. *Id.* Butorin contends that KBR has been, and will continue to be, severely damaged and injured by Defendants' misconduct. *Id.*

Two days before the public disclosure regarding material weaknesses, the Board enacted a bylaw relating to the forum in which certain types of lawsuits could be brought. Dkt. 14. Article VI, section 6 of KBR's bylaws states:

> <u>Exclusive Forum</u>. Unless the Corporation consents in writing to selection of an alternative forum, the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of fiduciary duty owed by any director or officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, . . . shall be a state court located within the State of Delaware (or, if no state court located within the State of Delaware has jurisdiction, the federal district court for the District of Delaware.)

Dkt. 13, Ex. 1, art. VI § 6 (hereinafter, the "Forum Selection Bylaw").

Defendants move to dismiss all of Butorin's claims based on the doctrine of *forum non conveniens*, arguing that both federal law and Delaware law dictate that the Forum Selection Bylaw be enforced, which in turn requires that Butorin's derivative claims be heard in state court in Delaware. Dkt. 13. Defendants contend that Butorin became contractually bound by KBR's bylaws

2

when he purchased KBR stock. *Id.* Butorin argues, on the other hand, that the Forum Selection Bylaw is unenforceable and invalid and that, regardless, since there is a federal claim over which federal courts have exclusive jurisdiction, the Delaware state courts have no jurisdiction and the clause may not operate to deprive Butorin and KBR of a federal forum for the federal claim. Dkt. 14.

## II. LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, __ U.S. __, 134 S. Ct. 568, 580 (2013). The appropriate way to enforce a forum selection clause pointing to another federal forum is through a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). *Id.* "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* Section 1404 and the *forum non conveniens* doctrine "entail the same balancing-of-interests standard, [and] courts should evaluate a forum-selection clause pointing to a nonfederal forum the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.*

Whether a forum selection clause is enforceable is determined according to federal law. *Alliance Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008). "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *see also Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 511 (5th Cir. 2007) (noting that a forum selection clause is not enforceable if it is

"fundamentally unfair and therefore unreasonable").  The party opposing enforcement bears the

heavy burden of making a "'strong showing' that the clause is unreasonable."  *Marinechance*

*Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998).  There are four bases for determining

that a forum selection clause is unreasonable:

> (1) the incorporation of the forum selection clause into the agreement
> was the product of fraud or overreaching; (2) the party seeking to
> escape enforcement 'will for all practical purposes be deprived of his
> day in court' because of the grave inconvenience or unfairness of the
> selected forum; (3) the fundamental unfairness of the chosen law will
> deprive the plaintiff of a remedy; or (4) enforcement of the forum
> selection clause would contravene a strong public policy in the forum
> state.

*Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines*

*v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522 (1991), and *M/S Bremen v. Zapata Off-Shore Co.*, 407

U.S. 1, 12–13, 92 S. Ct. 1907 (1972)).

    If the court determines a forum selection clause is valid and enforceable, the clause should

be "given controlling weight in all but the most exceptional cases."  *Stewart Org., Inc. v. Ricoh*

*Corp.*, 487 U.S. 22, 33, 108 S. Ct. 2239 (1988).  The plaintiff's choice of forum will have no weight,

and the plaintiff must instead show "that transfer to the forum for which the parties bargained is

unwarranted."  *Atl. Marine*, 134 S. Ct. at 581.  While courts that are considering whether a transfer

to another court is warranted typically consider a variety of private and public interest factors, if there

is a valid and enforceable forum selection clause, the court should not consider arguments about the

parties' private interests, as parties that have agreed upon a forum selection clause have, in essence,

waived "the right to challenge the preselected forum as inconvenient or less convenient for

themselves or their witnesses, or for their pursuit of the litigation."  *Id.* at 582; *see also Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252 (1981) (listing the private and public interest factors).  Instead, the court may consider only the public-interest factors.  *Atl. Marine*, 134 S. Ct. at 582.  The public interest factors include: (a) administrative difficulties flowing from court congestion; (b) local interest in having localized controversies decided at home; (c) interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (d) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (e) the unfairness of burdening citizens in an unrelated forum with jury duty.  *Piper Aircraft Co.*, 434 U.S. at 241 n.6.

### III. ANALYSIS

Defendants filed their motion to dismiss based on *forum non conveniens*, arguing that this case should have been filed in Delaware state court pursuant to the Forum Selection Bylaw.  Dkt. 13. If the Forum Selection Bylaw is valid and enforceable and within a Delaware state court's jurisdiction, then dismissal is appropriate.  If, however, there are claims that are *not* within a state court's jurisdiction, the Forum Selection Bylaw clearly indicates that claims should be brought in the federal district court for the District of Delaware.  *See* Dkt. 13, Ex. 1. In such a case, if claims are brought in the incorrect federal district court, the proper procedural mechanism to remedy the improper venue is a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).  *See Atl. Marine*, 134 S. Ct. at 580.  Defendants do not move for a transfer pursuant to 28 U.S.C. § 1404(a).[1]  The court will first consider whether the claims are within the jurisdiction of the Delaware state court and thus whether a motion to dismiss is the proper means of enforcing the Forum Selection Bylaw.

---

[1] Defendants do note, in their reply, that if the federal claim must be heard in federal court, then the claim must be brought in the federal district court in Delaware.  The appropriate way to get the claim before a Delaware federal court is a motion to transfer, not a motion to dismiss.

## A.      State Court Jurisdiction

The federal claim asserted in this case is an alleged violation of section 14(a) of the Securities and Exchange Act of 1934 and Rule 14a-9, which was promulgated pursuant to section 14(a).[2] *See* Dkt. 12 at Count III.  Under 15 U.S.C. § 78aa, federal district courts have *exclusive* jurisdiction over violations of the Securities Exchange Act of 1934 and the rules and regulations thereunder.  Thus, the Delaware state courts do not have jurisdiction over Butorin's federal claim.  Defendants argue that the federal claim "adds absolutely nothing to this lawsuit" and that the "Court should reject Plaintiff's creative pleading."  Dkt. 15.  Defendants do not, however, move to dismiss the federal claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  The claim, thus, remains, and the court cannot dismiss this case on the grounds that this case should have been brought in Delaware state court.  The motion to dismiss all claims is thus DENIED.

Defendants argue, alternatively, that the federal claim should be severed and stayed and the remaining claims should be dismissed because they should have been brought in Delaware state court.  Dkt. 15 at 1.  The court can think of no worse use of judicial resources than severing and staying one portion of this case so that the other related claims can be brought in Delaware state court.  The alternative request to sever and stay is DENIED.

---

[2]  Butorin alleged only state law claims of breach of fiduciary duty and abuse of control in his original complaint.  Dkt. 1.  The first amended complaint contains these claims, an additional state law claim for unjust enrichment, and a claim pursuant to section 14 of the Securities and Exchange Act of 1934, which relates to an allegedly false and misleading proxy statement that indicated that the 2013 financial reports were in compliance with GAAP.  Dkt. 12.  Butorin contends that the misleading proxy statement resulted in obtaining shareholder votes based on the misleading information.  *Id.*

[3]  Defendants do conclusorily state that the claim *should be* dismissed, but they do not cite Federal Rule of Civil Procedure 12(b)(6) and do not provide any legal arguments as to why the claim is invalid.

The best solution, given the fact that Defendants filed a motion to dismiss rather than a motion to transfer and that their alternative solution is unworkable, is for the court to exercise its equitable powers and *sua sponte* transfer the case if the court finds that it should have been brought in federal court in Delaware. *See Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761 (5th Cir. 1989) (noting that section 1404 transfer decisions may be made *sua sponte*). The court will now consider whether it is appropriate to *sua sponte* transfer this case to Delaware federal court.

## B.      Enforceability of Forum Selection Clause

Butorin contends that the Forum Selection Bylaw is unenforceable under federal law as it would be unreasonable to enforce it under the circumstances. Dkt. 14. He points out that the Fifth Circuit has found that clauses that are the product of fraud or overreaching are unreasonable. *Id.* (citing *Haynsworth*, 121 F.3d at 963). Butorin argues that unilaterally adopting a forum selection clause when KBR knew it was about to disclose weaknesses in its internal controls over financial reporting is egregious overreaching. *Id.* He points out that the Forum Selection Bylaw was enacted after Defendants knew KBR would be forced to disclose the issues but immediately before they were disclosed; he contends the timing was driven by their desire to control the potential fallout from the Board's own wrongdoing. *Id.*

Defendants point out that the Forum Selection Bylaw is presumed enforceable under federal law and that two almost identical clauses have recently been upheld as enforceable by Delaware state courts. Dkt. 13. They argue that Butorin agreed to be bound by KBR's bylaws when he purchased KBR stock and that KBR's certificate of incorporation expressly allows the bylaws to be unilaterally changed by the Board. *Id.* Defendants assert that the consideration Butorin received for the agreement to be bound by the bylaws was the stock. Dkt. 15. Defendants contend that the timing

7

of bylaw change here—the adoption of the forum selection clause—is immaterial.  Dkt. 13.
Defendants additionally argue that the amendment in no way limits stockholders' ability to file suit,
it merely dictates where they should do so.  Dkt. 15.

Butorin relies on *Galaviz v. Berg*, 763 F. Supp. 2d 1170 (N.D. Cal. 2011), and *In re
Facebook*, 922 F. Supp. 2d 445 (S.D.N.Y. 2013), for his arguments.  In *Galaviz*, the federal district
court for the Northern District of California considered whether directors could control the venue
for shareholder derivative actions by adopting a bylaw that requires derivative cases to be filed in
a particular forum.  763 F. Supp. 2d at 1171.  In that case, the bylaw was adopted after the alleged
wrongdoing took place, and the shareholders bringing the derivative case had purchased shares prior
to the bylaw being adopted.  *Id.*  The court found that, under federal common law contract principles,
the shareholders could not be bound by a forum selection clause that the directors unilaterally added
to the bylaws after the shareholders had purchased their shares.  *Id.* at 1174.  The court declined to
address whether the amendment to the bylaws was appropriate under Delaware corporate law.  *Id.*
at 1175.  *Galaviz* thus, while on point, does not address the impact of a provision in the company's
certificate of incorporation that gives power to the board to unilaterally change the bylaws.  Here,
the amended certificate of incorporation, which was approved by the shareholders, expressly gives
the board this power; the amended certificate was filed with the Secretary of State of Delaware on
June 6, 2012.[4]  Dkt. 13, Ex. 2.

In *In re Facebook*, the federal district court for the Southern District of New York refused
to remand a case based on a forum selection clause contained in Facebook's amended certificate of

---

[4]  The Certificate of Incorporation states that the board "is expressly empowered to adopt,
amend or repeal the Bylaws of the Corporation . . . ."  Dkt. 13, Ex. 2, art. 8.

incorporation. 922 F. Supp. 2d at 463. The certificate containing the clause was not filed until four days after the plaintiffs purchased their Facebook shares (during the initial public offering). *Id.* at 460. The court noted that under Delaware corporation law, an amendment to a certificate of incorporation only becomes effective at the time it is filed with the Delaware Secretary of State. *Id.* at 463 (citing *Blades v. Wisehart*, No. 5317-VCS, 2010 WL 4638603, at *3 (Del. Ch. Nov. 17, 2010)). The original certificate, which did not contain a forum selection clause, was in effect until the new one was filed, and thus in effect at the time the *In re Facebook* plaintiffs purchased their shares. *Id.* The court thus held that the claims and parties were not subject to the forum selection clause in the amended certificate. *Id.* While the instant case, like *In re Facebook*, involves a forum selection clause that was not in effect at the time the shareholder purchased his stock, it is different in that the forum selection clause here was in bylaws, not the certificate of incorporation itself, and the amended certificate of incorporation that was in effect gave the Board the power to unilaterally change the bylaws.

Defendants cite the following cases in support of their argument that the clause is enforceable: *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013); *City of Providence v. First Citizens BancShares, Inc.*, 99 A.3d 229 (Del. Ch. 2014); and *North v. McNamara*, __ F. Supp. 3d ___, No. 1:13-cv-833, 2014 WL 4684377 (S.D. Ohio Sept. 19, 2014). The two cases addressed in *Boilermakers* were brought by stockholders of Chevron Corporation and FedEx Corporation. 73 A.3d at 937. They opposed bylaw revisions by Chevron's board and FedEx's board that required all litigation relating to the companies' internal affairs be brought in Delaware. *Id.* The revised bylaws were similar to the Forum Selection Bylaw in this

9

case. Both Chevron's and FedEx's certificates of incorporation, like the amended certificate of incorporation in this case, empowered their boards to adopt bylaws. *Id.*

The *Boilermakers* plaintiffs complained that the forum selection bylaws were statutorily invalid because they were beyond the authority given to boards under Delaware corporation law. *Id.* at 938. The plaintiffs also argued that the bylaws were contractually invalid pursuant to the test adopted by the U.S. Supreme Court in *M/S Bremen*, 407 U.S. 1, which held that a clause resulting from "fraud, undue influence, or overweening bargaining power" is invalid. *Id.* The defendant corporations filed motions for judgment on the pleadings seeking dismissal of the complaints. *Id.* at 939. The *Boilermakers* court first noted that the validity of the bylaws must be determined pursuant to Delaware law due to the internal affairs doctrine.[5] *Id.* at 938. The court found that the bylaws were valid under 8 Del. C. § 109(b), which indicates that bylaws may contain provisions that relate to the "business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees." The court found that the forum selection bylaws governed disputes related to the corporations' internal affairs and thus fit easily within the statutory requirements for bylaws. *Id.* at 939. The Forum Selection Bylaw in this case similarly meets these statutory requirements.

As far as enforceability, the *Boilermakers* court noted that "bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers, and stockholders formed within the statutory framework of the [Delaware General Corporation Law]." *Id.* The court points

---

[5] "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S. Ct. 2629 (1982).

out that the contract is flexible by design and that investors know that when they purchase stock. *Id.* Additionally, the court notes that Delaware General Corporation Law allows corporations, through their certificates of incorporation, to grant directors the power to unilaterally adopt and amend the bylaws. *Id.* Both FedEx's and Chevron's certificates of incorporation allowed the boards to amend their bylaws, and thus, when investors bought stock, they knew that the board could change the bylaws. *Id.* at 939–40. The court pointed out that "stockholders who invest in such corporations assent to be bound by board-adopted bylaws when they buy stock in those corporations." *Id.* at 940 (citing *Centaur Partners, IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 928 (Del. 1990)). This court agrees with that reasoning.

In *City of Providence*, the City of Providence brought claims against First Citizens BancShares, Inc. ("FCBI") for issues relating to FCBI's merger with First Citizens Bancorporation, Inc. (the "Disputed Merger") and for breach of fiduciary duty in connection with FCBI's adoption of a forum selection clause selecting the United States District Court for the Eastern District of North Carolina as the forum in which these types of suits against FCBI must be brought. 99 A.3d at 230–31. The City of Providence also sought a declaratory judgment that the forum selection bylaw was invalid. *Id.* at 232.

FCBI moved to dismiss the case for failure to state a claim and improper venue. *Id.* at 231–32. The forum selection bylaw was enacted by the board of FCBI on June 10, 2014, the same day that FCBI entered into the Disputed Merger. *Id.* at 232. The *City of Providence* court found that the bylaw was facially valid under Delaware law for the essentially the same reasons the *Boilermakers* court found the clauses in that case valid; the clause was almost identical to the clauses in *Boilermakers* except that it chose a different forum. *Id.* at 234. The *City of Providence* court

decided that the choice of North Carolina as the forum rather than Delaware did not impact the clause's facial validity. *Id.* at 235.

The court then addressed various challenges to the enforceability of the clause, including whether the timing of the adoption, which coincided with the adoption of the merger agreement for the Disputed Merger, rendered the clause unreasonable as applied. *Id.* at 238. The City of Providence argued that the adoption of the clause simultaneously with the merger agreement went beyond the City of Providence's reasonable expectations as a stockholder. *Id.* at 240. The court disagreed, noting that "the reasonable expectation a stockholder of [FCBI] should have is that its Board may adopt a forum selection bylaw that, subject to challenge on an as-applied basis, designates a court outside Delaware as the exclusive forum for intra-corporate disputes," as 8 Del C. § 109 gives the board authority to adopt binding bylaws. *Id.* (citing *Boilermakers*, 73 A.3d at 940).

The City of Providence argued that, regardless, it was inequitable to apply the clause because it was adopted in connection with a self-interested transaction and disproportionately benefitted a controlling stockholder. *Id.* The court again disagreed, noting that there was no reason that the North Carolina courts could not adjudicate the self-interest claims as easily as a Delaware court, so the forum selection bylaw could not have advanced the self interests of the controlling stockholder. *Id.* at 241. The court summarized its holding as follows:

> [T]he Forum Selection Bylaw merely regulates '*where* stockholders may file suit, not *whether* the stockholders may file suit or the kind of remedy that the stockholder may obtain.' . . . That the Board adopted it on an allegedly 'cloudy' day when it entered into the merger agreement with [FCBI] rather than on a 'clear' day is immaterial given the lack of any well-pled allegations in [the complaints] demonstrating any impropriety in this timing.

12

*Id.* (citations omitted).   In the instant case, there are no allegations in the amended complaint regarding the impropriety of the timing.   *See* Dkt. 12.

The final argument addressed by the *City of Providence* court was that the clause could not be enforced because it was adopted after the claims arose.   99 A.3d at 241.   The court summarily dismissed this argument, noting that the articles of incorporation put shareholders on notice that the bylaws could change, so "'no vested rights [could] arise that would contractually prohibit an amendment.'"   *Id.* at 241 n.50 (quoting *Boilermakers*, 73 A.3d at 955).

In the final case upon which Defendant rely, *North*, the federal district court for the Southern District of Ohio considered a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) in a shareholder derivative action brought by Mildred North against Chemed Corporation and various individual defendants.   2014 WL 4684377, at *1.   The case related to the VITAS Innovative Hospice Care ("VITAS") segment of Chemed's business.   *Id.*   North contended that the individual defendants caused VITAS to submit false claims to Medicare and Medicaid and make false and misleading statements to the investing public.   *Id.*   Chemed's certificate of incorporation, which was dated March 26, 1970, included a provision that authorized the board to adopt or amend the bylaws without a stockholder vote.   *Id.*   North purchased her stock in 2010.   *Id.* at *2.   Chemed amended its bylaws in 2013 to include a bylaw (similar to the bylaw in the instant case) that adopted a state or federal court in Delaware as the exclusive forum for derivative suits and other types of claims.   *Id.* North filed a derivative claim against Chemed in November 2013 in Ohio.   *Id.*

In her opposition to Chemed's motion to transfer venue, North contended that the forum-selection bylaw was not enforceable because (1) the shareholders did not consent to the bylaw; (2) the bylaw was adopted for an improper purpose; and (3) forcing North to bring suit in Delaware was

"seriously inconvenient." *Id.* at \*3–\*7. The court discussed *Galvaniz*, *In re Facebook*, and *Boilermakers*. With regard to North's contention that the bylaw should not be enforced because it was unilaterally adopted by the board, the court concluded that the reasoning in *Boilermakers* was the most persuasive. *Id.* at \*4. The court concluded that the "fact that the shareholders are unsatisfied with the consequences of the application of the terms to which they agreed [when purchasing the stock] is an insufficient basis upon which to find the bylaw so inequitable that it should not be enforced." *Id.* at \*5.

With regard to North's contention that she did not consent to the bylaw because her claims arose before the bylaw was enacted, the court noted that the courts in both *Galaviz* and *In re Facebook* has taken issue with a forum-selection bylaw being adopted *after* the purported wrongdoing, and that the courts in both *Boilermakers* and *City of Providence* indicated that it did not matter. *Id.* at \*6. The *North* court concluded that "the forum-selection bylaw does not become unenforceable simply because it was adopted after the purported wrongdoing," so long as the clause is reasonable and fair. *Id.*

The court next addressed the argument that the bylaw was adopted for an improper purpose as it discourages derivative claims by increasing the difficulty and costs of pursuing such claims. *Id.* at \*7. The court was not convinced, deeming this argument conclusory and insufficient to demonstrate an improper purpose. *Id.*

Finally, in addressing the argument that Delaware was a seriously inconvenient forum, the court noted that in order to show serious inconvenience, the plaintiff must show that she was effectively deprived of a meaningful day in court, which she failed to do. *Id.* (citing, among other

14

cases, *M/S Bremen*, 407 U.S. at 19).   The court ultimately granted the motion to transfer and transferred the case to the United States District Court for the District of Delaware.   *Id.* at *10.

  This court is in agreement with the *City of Providence* and *North* with regard to the timing issues identified by Butorin.   The certificate of incorporation that empowered the board to unilaterally change the bylaws had been in effect at least since the certificate was amended in 2012. Dkt. 13, Ex. 2.   The timing of Butorin's purchase of stock is unclear from the current record, but even if he already owned his stock when the amended certificate went into effect, the amended certificate was approved by the shareholders.   So, Butorin cannot argue that he was not on notice that the certificate of incorporation allowed the board to unilaterally change the bylaws at the time the Forum Selection Bylaw was enacted.   If he was unhappy with giving the Board this much power, he was free to sell his stock at that time.   As the *North* court stated, the "fact that [Butorin is] unsatisfied with the consequences of the application of the terms to which [he] agreed [when purchasing the stock] is an insufficient basis upon which to find the bylaw so inequitable that it should not be enforced."   *North*, .  2014 WL 4684377, at *5.

  With regard to Butorin's allegation of impropriety because the Board adopted the bylaw after it allegedly knew there were issues with KBR's financial statements but before the issues were publicly disclosed, the court agrees with the *City of Providence* and *Boilermakers* courts' conclusions that "'no vested rights [could] arise that would contractually prohibit an amendment.'" because the shareholders were on notice that the bylaws could be amended.   *City of Providence*, 99 A.3d at 241 n.50; *Boilermakers*, 73 A.3d at 955.   Additionally, like in *City of Providence*, there are no well-pled allegations in the amended complaint demonstrating that this timing was improper.

15

The court is next left to consider whether the Forum Selection Bylaw, as applied, is reasonable and fair. Butorin contends that it is unreasonable as applied because the Forum Selection Bylaw is being used for improper purposes that are inconsistent with the directors' fiduciary duties. Dkt. 14. Specifically, Butorin contends that (1) Defendants have the option to permit a plaintiff to proceed in this court; and (2) there is no duplicative litigation across multiple fora, and, in fact, there is another case currently pending in the Southern District of Texas. *Id.* Butorin argues that it would be more expensive for Defendants to litigate this case in federal court in Delaware than to litigate it here, given the other claim currently proceeding here. *Id.*

First, the fact that Defendants have the option to allow Butorin to proceed here and have not exercised that option does not render the clause unreasonable or unfair as applied. According to Defendants, Butorin has not even asked the Board to waive the Forum Selection Bylaw. Dkt. 15 at 5 n.21. Next, the court does not believe that the clause is unreasonable as applied simply because there is currently another case pending in this court. The point of the Forum Selection Bylaw is to consolidate as many cases as possible in Delaware. Not all cases will fall within the clause. But since the Forum Selection Bylaw covers many types of cases, there will likely be more cases in Delaware than elsewhere. That there are no other cases today, if that is indeed the case, causes the court little concern. Who knows what tomorrow may bring? Having one other case in Houston at this time may make it easier *for Defendants*, a contention the court questions to some extent since Defendants are attempting to enforce Delaware as the forum, but this has little to do with whether it is unfair as applied to the plaintiff. Butorin was on notice that the Board could change bylaws, the Board changed them, and Butorin is now bound by them. The court finds that the Forum Selection Bylaw is valid and enforceable.

16

C.     **Public Interest Factors**

The court moves now to consideration of the public interest factors.  The first factor relates to court congestion.  There is no indication that there is any court congestion in federal court in Delaware that would prohibit the timely consideration of this matter.  The first factor thus has no weight.  The second factor involves local interests in having local controversies resolved at home.  There may be some local interest in this controversy, since KBR's principal executive offices are in Houston, Texas.  However, the issues in this case relate to stockholders from many different places, so the court finds that this factor weighs only slightly in favor of retention.  The third and fourth factors, relating to interest in having the trial of a diversity case in a forum that is at home with the law that must govern and avoidance of problems with conflicts of law or application of foreign law, are neutral, as this court and the Delaware court are equally able to interpret and apply the applicable law.  The final factor is whether it is unfair to burden citizens in an unrelated forum with jury service.  Since both Delaware and Houston have connections to this case, this factor is neutral.  These factors, taken together, weigh only slightly in favor of retaining the case and do not outweigh the contractual choice of Delaware as the forum.  The court will therefore enforce the Forum Selection Bylaw and transfer the case to Delaware federal court.

## IV. CONCLUSION

Defendants' motion to dismiss (Dkt. 13) is DENIED.  However, the court finds that the Forum Selection Bylaw is valid and enforceable and *sua sponte* TRANSFERS this case to the United States District Court in the District of Delaware.

Signed at Houston, Texas on March 31, 2015.

_____
Gray H. Miller
United States District Judge